Harlan B. Krogh
Haley Ford
Crist, Krogh, Alke & Nord, PLLC
2708 1st Avenue North, Suite 300
Billings, MT  59101
Telephone: (406) 255-0400
Facsimile: (406) 255-0697
hkrogh@cristlaw.com

*Attorneys for Defendant Valley County*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| ELENA SALINAS,<br><br>Plaintiff,<br><br>v.<br><br>VALLEY COUNTY, LUKE STROMMEN, and JOHN DOES 1-3,<br><br>Defendants. | No. CV-19-90-GF-BMM<br><br><br>**DEFENDANT VALLEY COUNTY'S STATEMENT OF UNDISPUTED FACTS** |

_____

Pursuant to Rule 56.1(a) Local Rules of Procedure, Defendant Valley County hereby submits its Statement of Undisputed Facts in support of its Motion for Summary Judgment. Doc. 29.

1.      Luke Strommen was hired as a deputy sheriff with Valley County in 2009.  He grew up on a ranch in nearby Hinsdale, MT, and his extended family was well known and well liked to the local community.  (Dep. Meier 10:22-11:4,

attached as Exhibit A; Dep. Buerkle 58:3-8, attached as Exhibit B).

2.      Strommen worked continuously as a Valley County law enforcement deputy, and later as an Undersheriff from 2009 until June 15, 2018, when he was suspended pending an investigation by the State of Montana, Department of Criminal Investigation.  (Dep. Buerkle 42:20- 44:8, attached as Exhibit B; Dep. Ex. 8, attached as Exhibit C).

3.      On or about May 10, 2018, Sheriff Vernon Buerkle learned of a rumor involving allegations against Luke Strommen that he offered to dismiss a DUI charge to a female in exchange for sex.  Buerkle requested the State of Montana Department of Criminal Investigation to conduct an investigation into the allegations.  (Dep. Exs. 5, 6, 7, attached as Exhibits D-F, respectively; Dep. Buerkle 30:6-34:23, attached as Exhibit B).

4.      On August 13, 2018, Strommen was demoted from Undersheriff to deputy rank by Valley County Sheriff Vernon Buerkle.  (Dep. Buerkle 46:1-17, attached as Exhibit B; Dep. Ex. 9, attached as Exhibit G).

5.      In October 2018, Valley County retained Michele Puiggari, a human resources consultant, to conduct an internal investigation into the alleged actions of Luke Strommen.  (Dep. Buerkle 49:2-5, attached as Exhibit B; Puiggari Report, Dep. Ex. 19, attached as Exhibit H).

6.      On October 29, 2018, Valley County Sheriff Buerkle notified

Strommen in writing that a due process hearing would be scheduled in furtherance of the internal investigation which found Strommen violated Valley County Sheriff's Office's policies. (Dep. Buerkle 51:4-52:3, attached as Exhibit B; Dep. Ex. 12, attached as Exhibit I).

7.      On November 1, 2018, Strommen submitted his written letter of resignation and Valley County accepted it. (Dep. Buerkle 52:7–53:1, 53:11-22, attached as Exhibit B; Dep. Exs. 13, 14, attached as Exhibits J-K, respectively).

8.      On or about October 8, 2019, Strommen pled guilty to a single count of sexual abuse of a child. Strommen admitted to receiving an emailed image of a 17- year-old girl "in a partial state of undress". The image was of the victim from the waist up showing her bra. (Acknowledgement of Rights and Plea Agreement, October 8, 2019, attached as Exhibit L).

9.      On or about July 15, 2019, a Valley County district court jury found Luke Strommen guilty of committing sexual intercourse without consent of a minor. (Verdict Form, attached as Exhibit M). The sexual assault occurred from 2009 to 2011. (Third Amended Information, March 2, 2020, attached as Exhibit N).

10.     Strommen was sentenced to 40 years in state prison. He is currently incarcerated in Deer Lodge, MT, awaiting his appeal to the Montana Supreme Court. (Sentence and Judgment, January 5, 2021, attached as Exhibit O; Montana

Supreme Court Case No. DA 21-0086).

11.     Plaintiff Elena Salinas was formerly employed as a U.S. Border Patrol agent stationed near Opheim, MT.  (Dep. Salinas 6:1-17, attached as Exhibit P).

12.     Plaintiff Salinas' employment ended with her "forced resignation" from Homeland Security in 2019.  (Dep. Salinas 6:24-7:25). Salinas alleged that her co-workers were "sabotaging [her] paperwork" to make her look "incompetent". (Dep. Salinas 10:23-11:18, attached as Exhibit P).

13.     During her former employment with Homeland Security, Ms. Salinas filed complaints while she worked in Opheim against her direct supervisor Lisa Cintron for harassment.  (Dep. Salinas 11:19-14:2; 20:11-17, attached as Exhibit P).

14.     She also filed complaints against her co-worker Anthony Roberts who she had kissed a couple of times. (Dep. Salinas 20:18-23:6, attached as Exhibit P). A mutual no-contact order was later obtained by both of the parties. (Dep. Salinas, 26:21-27:9, attached as Exhibit P).

15.     She filed complaints against her former Port Director Ted Jones located in Scobey, MT, her former Port Director Kevin Ryan while working in North Dakota and a complaint for misuse of government property by another co-worker named Jose', which she could not remember his last name, while she worked in California.  (Dep. Salinas, 28:15-31:22, 29:19-30:17, attached as Exhibit

P).

16.     Ms. Salinas also reported another government worker Dewey Tarver for misusing government property after he volunteered to look under Salinas' vehicle using a lift when she told him her vehicle had an oil leak.  (Dep. Salinas, 33:15-34:18, attached as Exhibit P).

17.     On or about December 21, 2014, Salinas reported to Valley County law enforcement that a former co-worker was stalking her.  (Dep. Salinas, 51:16-52:9, attached as Exhibit P; Dep. Ex. 1, attached as Exhibit Q; Dep. Buerkle, 14:5–15:4, attached as Exhibit B).

18.     Salinas contends that in late December 2014, Luke Strommen came to her residence to obtain a sworn statement from her in support of her recent stalking complaint. This was the first time she met Strommen. (Dep. Salinas. 70:1-22, attached as Exhibit P; Dep. Ex. 23, attached as Exhibit R).

19.     While standing in Salinas' kitchen, Strommen told Salinas she looked like someone on TV.  Salinas described Strommen as flirtatious, charming, and savvy. Salinas found Strommen to be attractive.  (Dep. Salinas 71:1-75:6, attached as Exhibit P).

20.     She was not uncomfortable with his conversation.  (Dep. Salinas 75:7-12, attached as Exhibit P). There was nothing inappropriate and she was not sexually assaulted.  (Dep. Salinas 75:10-17, attached as Exhibit P). Salinas and

Strommen started a friendship after that initial meeting.  (Dep. Salinas 75:25-78:25, attached as Exhibit P).  It lasted about two weeks. (Dep. Salinas 77:23-25, attached as Exhibit P).

21.    Salinas and Strommen communicated by phone calls and text messages during that time.  (Dep. Salinas 77:1-8, attached as Exhibit P).  There were around 400 texts between the two of them.  (Dep. Salinas 77:12-20, attached as Exhibit P).

22.    Salinas described her relationship with Strommen as flirtatious and friendly.  She felt "giddy" and happy when she communicated with him. (Dep. Salinas 80:23-81:13, attached as Exhibit P).

23.    After the time Salinas had finished her statement about her stalking complaint, Strommen came over to her house one night in late December 2014 or early January 2015.  She was anticipating him coming.  (Dep. Salinas 82:25-83:15, attached as Exhibit P).

24.    After the two of them had talked for a while, Salinas alleges Strommen hugged her, and aggressively started to kiss her. Salinas contends Strommen mimicked sexual acts he wanted to do with her and then sexually assaulted her by penetrating her vagina with his finger. (Dep. Salinas 83:25-86:22, attached as Exhibit P).

25.    Salinas told a few people about the incident which included high

school people, elementary school, middle school people that she knew.  Even though she shared details of this allegedly intimidate, difficult incident, Salinas cannot remember any of their names. (Dep. Salinas 88:8-22, attached as Exhibit P).

26.     Salinas and Strommen's relationship continued after the incident.  She continued to call him and text him. (Dep. Salinas 102:10-103:6, attached as Exhibit P).

27.     Salinas received a call from Tara Strommen, Luke Strommen's wife, late one night concerning Salinas' relationship with Luke Strommen.  Salinas told Tara to "keep your man on a leash".  (Dep. Salinas 103:8-23, attached as Exhibit P).  After Tara Strommen hung up on Salinas, Salinas called Meier and Buerkle and made her complaint on Luke Strommen.  (Dep. Salinas 103:18-23, attached as Exhibit P).

28.     Glen Meier served as the Sheriff of Valley County, Montana continuously from 2003 until his retirement effective on December 31, 2016.  At his retirement, Vernon Buerkle, the former UnderSheriff became Sheriff.  (Dep. Meier 6:12-7:14, attached as Exhibit A).

29.     On approximately January 10, 2015, Plaintiff Elena Salinas telephoned the Valley County Sheriff's Office and spoke with Meier about Strommen.  Salinas stated that she was "uncomfortable" with Deputy Luke Strommen.  (Dep. Salinas 91:20-92:11, attached as Exhibit P; Dep. Buerkle. 9:14-

10:13, attached as Exhibit B).

30.     Meier consulted with Valley County Attorney Nick Murnion about Salinas' phone call.  County Attorney Murnion recommended that Meier obtain a sworn statement from Salinas to determine the nature and details of her allegations. (Dep. Buerkle 10:23–11:3, 72:14-17, attached as Exhibit B).

31.     Sheriff Meier requested Vernon Buerkle, Valley County Undersheriff, to listen in on the speaker phone on a follow up phone call with Salinas.  (Dep. Buerkle 11:4-12:3; 12:17-20, 72:18-25 attached as Exhibit B).

32.     Buerkle had been employed by the Glasgow Police Department for 21 years before joining the Valley County Sheriff's Office.  He was employed for 19 years and 8 months before retiring on December 31, 2018.  (Dep. Buerkle 5:14-7:7, attached as Exhibit B).

33.     Plaintiff Salinas advised both Meier and Undersheriff Buerkle that Luke Strommen had recently visited her at her home near Opheim, MT.  She described that Strommen had taken his shirt off in front of her and had chased her around the (kitchen) island and as a result that she wouldn't cooperate, that he had left.  (Dep. Buerkle 12:21-13:10, attached as Exhibit B). There was no allegation of sexual assault or non-consensual touching.  (Dep. Buerkle 23:24-25:1, attached as Exhibit B).

34.     Salinas remembers her telephone call with Sheriff Meier and

Undersheriff Buerkle in January 2015.  She only told them she wanted "[Luke] to stay away from me".  That was all that she wanted him to do is stay away from her and her property.  (Dep. Salinas 93:2-6, 93:21-94:3, attached as Exhibit P).  She did not tell Meier and Buerkle that she had been sexually assaulted.  (Dep. Salinas 93:7-12, attached as Exhibit P).  She did not tell them Strommen digitally penetrated her with his finger.  (Dep. Salinas 93:15-19, attached as Exhibit P).  She did not tell them she had been raped.  (Dep. Salinas 93:24-94:6, attached as Exhibit P).  She did not even want Luke to lose his job over her complaint. (Dep. Salinas 94:11-23, attached as Exhibit P).  That was exactly what she said to Sheriff Meier. (Dep. Salinas 94:21-23, attached as Exhibit P; Dep. Meier 121:5-13, attached as Exhibit A).

35.     Even though Salinas did not report any sexual assault to Meier and Buerkle, Salinas believed her voice changed when she told them, "something really bad" happened to her.  She believes Meier and Buerkle should have perceived by the tone of her voice and the choice of her words that a sexual assault occurred even though she did not use those words.  (Dep. Salinas 95:19-23, attached as Exhibit P).

36.     Salinas testified that in June 2018 she told DCI Investigator Bruce McDermott the same thing that she told Sheriff Meier and Undersheriff Buerkle that she only wanted Luke Strommen to stay away from her. (Dep. Salinas 96:24-

98:8, attached as Exhibit P).

37.     Sheriff Glen Meier and Undersheriff Buerkle requested Salinas to come into the Valley County Sheriff's Office and fill out a written complaint and/or sworn statement describing her allegations against Luke Strommen.  She initially agreed to do so.  (Dep. Buerkle 15:5-14; 18:11-19, attached as Exhibit B).

38.     Salinas understood the importance of a written statement. (Dep. Salinas 98:7-11, attached as Exhibit P).

39.     It was critical for Salinas to provide a sworn statement describing the nature of the complaint to conduct an investigation against a law enforcement officer.  (Dep. Buerkle 15:15-16:12, attached as Exhibit B; Dep. Salinas 98:12-99:3, attached as Exhibit P).

40.     It is important that any allegations made against law enforcement be credible and the complainant must be willing to verify them either in writing or by recorded statement.  (Dep. Buerkle 17:4-9, attached as Exhibit B).

41.     Salinas understood that it is only fair for the officer being accused that a written statement be provided by the victim since it is the only way that an officer can defend himself against a false accusation. (Dep. Salinas 99:10-14, attached as Exhibit P).

42.     If a person is unwilling to provide a written or recorded statement verifying the truth of their allegations, it would interfere with the ability to

investigate and there is generally no further action in that case.  (Dep. Buerkle

16:13-17:24, attached as Exhibit B; Dep. Meier: 122:7-13, attached as Exhibit A).

43.     Salinas later declined to come into the Sheriff's office and provide a

statement against Luke Strommen.  (Dep. Buerkle 23:6-17, attached as Exhibit B;

Dep. Meier 38:10-14; 72:8-21, attached as Exhibit A; Dep. Salinas 99:7-9; 22-24,

attached as Exhibit P).

44.     Salinas told Sheriff Meier and Undersheriff Buerkle that she did not

want to file a formal complaint against Luke Strommen.  She did not want

anything done to Strommen except for Strommen to leave her alone.  (Dep.

Buerkle 23:8-17, 117:23-118:5, attached as Exhibit B; Dep. Meier 72:2-13,

attached as Exhibit A).

45.     No independent corroborating evidence was ever found to support

Salinas' allegations.  (Dep. Buerkle 20:9-24; 23:12-17; 23:24-24:5, 73:25-74:7,

74:16-75:2, attached as Exhibit B; Dep. Meier 122:7-22, attached as Exhibit A).

46.     Strommen denied he had sexually assaulted Salinas in any way.

Strommen admitted that he and Salinas had engaged in a consensual

friendship/relationship where they texted one another and talked to each other.

(Dep. Buerkle 20:18-24, attached as Exhibit B; Dep. Meier 73:1-7, attached as

Exhibit A).

47.     Strommen stated that he and Salinas communicated to one another

through texting about private personal matters.  Strommen advised Meier that there were approximately 400 text messages between him and Salinas.  (Dep. Buerkle 25:2-10; 69:11-17; 81:21-82:3, attached as Exhibit B).

48.  Salinas admitted that she and Strommen had texted one another about private personal information.  Sheriff Meier requested a copy of the text messages from Salinas.  She declined to provide them as she told Meier that she had deleted them.  (Dep. Meier 39:17-40:3; 71:15-21, attached as Exhibit A).

49.  Sheriff Meier attempted to obtain a copy of the text messages from Nemont, the wireless telephone company that provided service to the cell phones issued and owned by Valley County.  He was denied access to the text messages because Salinas would not consent to their disclosure.  (Dep. Meier 40:6-41:13, attached as Exhibit A).

50.  On January 27, 2015, Sheriff Meier initiated a due process procedure against Luke Strommen for his violations of County policy relating to his actions involving Elena Salinas.  (Dep. Meier. 24:13-23; 26:11-19, attached as Exhibit A; Dep. Ex. 3, attached as Exhibit S).

51.  On March 2, 2015, Meier initiated discipline upon Luke Strommen.  Luke Strommen was demoted.  His badge number was reassigned to a lower seniority position amongst other deputies within the office.  Strommen's privileges to text from his Valley County owned cell phone were suspended until further

notice.  Strommen was also scheduled to be suspended for one (1) week off work without pay. (Dep. Buerkle 25:23-26:19, 27:9-13, attached as Exhibit B; Dep. Ex. 3, attached as Exhibit S). Valley County's Expert Witness Mark Muir is expected to testify to the opinion that despite the alleged victim's lack of cooperation, Sheriff Meier investigated Strommen following the allegations and found evidence of policy violations related to his activities on January 10 and 11, 2015, issuing discipline for what he believed he could prove. (Muir Expert Report, p. 13, attached as Exhibit T).

52.    Strommen was demoted in rank below Chief Deputy Matt Remmich who had less seniority and experience than Strommen.  (Dep. Meier 85:22-86:6, 87:14-24, attached Exhibit A).

53.    Salinas alleges that during 2015-18, Strommen patrolled her neighborhood and posted up outside her house, passed within close proximity to plaintiff alone and unsupervised causing her harm. (Third Amended Complaint and Demand for Jury Trial, June 25, 2020 (Doc. 19).

54.    Salinas alleges Strommen parked his vehicle near her residence at times, passed by her driving his vehicle on public roads or streets and walked past by her on one occasion in the hallway of the Valley County Courthouse near the Sheriff's Office when Salinas was with her husband.  Strommen did not speak with Salinas.  None of these incidents were reported to any federal, state or local law

enforcement agency even though she was employed at the time as a federal agent. (Dep. Salinas 106:15-109:14, 109:23-110:16, 113:16-114:21, attached as Exhibit P).

55.     Salinas further testified that the "unsupervised association" with Strommen she alleges in Paragraph X of the Third Amended Complaint was based on Strommen parking near her residence "during Stonegarden," which she explained is a program where FEMA provides grant money to counties to pay local law enforcement to patrol near the border, instead of the federal government paying the higher salary or hourly rate of border patrol agents to patrol near the border. (Dep. Salinas 106:15-107:16, attached as Exhibit P). Salinas lives in the port neighborhood.  (Dep. Meier 81:1-4, attached as Exhibit A).

56.     Salinas testified that she thinks the "unsupervised association" with Strommen, consisting of him parking outside of her house and patrolling the neighborhood during Stonegarden, occurred "maybe about four or five times" over the years. (Dep. Salinas 106:15-109:5, attached as Exhibit P).

57.     Salinas testified that Strommen never tried to contact her and never tried to approach her during any of these 4-5 instances. (Dep. Salinas 111:25-112:5, attached as Exhibit P).

58.     Salinas could not identify when these events occurred. She has no recollection of what the dates were. (Dep. Salinas 109:6-10, attached as Exhibit P).

59.     Salinas has no documentation to support her allegation of Strommen patrolling or parking outside of her residence. She cannot produce any witnesses. (Dep. Salinas 109:11-12, attached as Exhibit P).

60.     Salinas has no evidence to suggest that Strommen was unauthorized to be at the locations where she observed him.  (Dep. Salinas 112:4-5; 113:7-15, attached as Exhibit P).

61.     During approximately this same time (2014-18), Salinas called Valley County 9-1-1 emergency services on 24 occasions to report such things as cows roaming outside of a fence; smoke; a neighbor/supervisor at work harassing, intimidating, threatening and contacting her; a report of a possible violation of a restraining order on her co-worker; an alleged assault by a neighbor when the neighbor allegedly slapped Salinas' hand as Salinas touched a blossom on a lemon tree; a sexual harassment complaint on a co-worker; several calls reporting the current status and whereabouts of her neighbor; a complaint for credit card fraud on an item she purchased online; and other reported instances of alleged misconduct or wrongdoing.  (Dep. Salinas 101:5-13, attached as Exhibit P; Dep. Exs. 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, attached as Exhibits U-FF, respectively).

62.     Prior to Elena Salinas' call to Valley County in January 2015, and thereafter until 2018, there were no substantiated complaints, with the exception of

one which was investigated and determined to be unfounded, that Valley County knew or should have known about regarding Luke Strommen involving another woman.  (Dep. Buerkle 26:20-27:8; 29:20-24, attached as Exhibit B).

63.    Between April 2015 – 2018, there were no complaints against Luke Strommen. (Dep. Buerkle 29:15-24, attached as Exhibit B).

64.    Valley County Sheriff Meier received an anonymous typewritten letter regarding involvement with women or underage girls. Dep. Buerkle 29:15-24.  The letter was also sent to the City of Glasgow Chief of Police and the Valley County Justice of the Peace.  The letter alleged that a "Sheriff" was having sex with an underage girl.  No one signed the letter.  No officer or deputy was identified in the letter except for a reference to "Sheriff".  Glen Meier was the Valley County Sheriff at that time.  (Dep. Meier 26:14-27:9, 125:8-22. attached as Exhibit A).

65.    Sheriff Meier did not believe it pertained to one of his deputies. (Dep. Meier 125:16-127: 17, attached as Exhibit A). Chief of Police Lynn Erikson described the letter as an example of people "kicking at us" [law enforcement]. Meier 27:24-28:5. Valley County's Expert Witness Mark Muir is expected to testify to the opinion that the anonymous letter was not reasonably sufficient to initiate an investigation since no victim or perpetrator was identified therein. (Muir Expert Report, p. 13, attached as Exhibit T).

66.     Valley County Sheriff Meier learned of a rumor through hearsay conversations that teachers at the high school were talking about Luke having sex with high school girls.  No teachers ever came forward to report this rumor, and no high school girls were identified in the rumor.  (Dep. Meier 22:2-7, attached as Exhibit A).

67.     Rumors about law enforcement officers acting inappropriately were common but rarely supported by any credible evidence.  Dep. Meier 127:18-21, attached as Exhibit A).

68.     No evidence was found at the time of the rumors that proved Luke Strommen was having sex with high school girls.  (Dep. Buerkle 29:15-24, 41:3-6, attached as Exhibit B). Valley County's Expert Witness Mark Muir is expected to testify to the opinion that no rumored behavior directly accused Deputy Strommen; nor did any reliable informant come forward with information to put Valley County on notice that Strommen was likely to have or was having inappropriate sexual activity before hiring or during his employment preceding Plaintiff's report in 2015. (Muir Expert Report, pp. 12-14, attached as Exhibit T).

69.     On July 9, 2020, Plaintiff Elena Salinas dismissed Luke Strommen with prejudice from this present action, but she could not explain why she did so. (Dep. Salinas 90:1-91:19, attached as Exhibit P; Stipulation for Dismissal with Prejudice of Luke Strommen, July 9, 2020 (Doc. 21); Order of Dismissal with

Prejudice of Luke Strommen, July 13, 2020 (Doc. 22)).

70.     She has not suffered any physical injury which would form the basis for any emotional distress. (Dep. Salinas 119:24-120:9, attached as Exhibit P; Plaintiff's First Supplemental Responses to Defendant Valley County's First Combined Discovery Requests, Answer to Interrogatory No. 10, attached as Exhibit GG).

71.     Salinas has not incurred any medical expenses related to these events as of her First Supplemental Responses to Valley County's First Set of Discovery (Dec. 7, 2021), though she is of the opinion that "future medical expenses in the form of counseling are fairly typical in these types of cases." (Plaintiff's First Supplemental Responses to Defendant Valley County's First Combined Discovery Requests, Answer to Interrogatory No. 10, attached as Exhibit GG).

72.     Elena Salinas began treating with a counselor in 2022. She has met with a counselor 3 or 4 times. (Dep. Salinas 120:10-18; 22-24, attached as Exhibit P).  She has not been diagnosed with any condition. (Dep. Salinas 121:4-5, attached as Exhibit P; Plaintiff's First Supplemental Responses to Defendant Valley County's First Combined Discovery Requests, Answer to Interrogatory No. 10, attached as Exhibit GG; Dep. Salinas 120:10-18, attached as Exhibit P).

73.     When asked about any emotional distress symptoms, Salinas testified that it is "difficult" to return to Valley County and that returning for her deposition

made her "uncomfortable." (Dep. Salinas 125:24-126:19, attached as Exhibit P).
Salinas lives in Columbus, North Dakota. (Dep. Salinas 37:1-4, attached as Exhibit
P).

74.     Salinas testified that any emotional distress symptoms she may
experience are isolated to only when she thinks about the events and are
intermittent. (Dep. Salinas 127:13-21, attached as Exhibit P).

75.     Salinas has not lost any work or taken any time off from work as a
result of the events alleged in her action. (Dep. Salinas 128:1-24, attached as
Exhibit P).

76.     Salinas has not lost any wages and cannot produce any evidence or
factual support for her allegation of past, present, and future loss of earning
capacity. (Plaintiff's First Supplemental Responses to Defendant Valley County's
First Combined Discovery Requests, Answer to Interrogatory No. 10, attached as
Exhibit GG).

77.     Salinas testified when asked about her allegation of loss of established
course of life that she does not trust police officers as much anymore, though
Salinas continued to make 911 calls to Valley County through 2020 reporting other
unrelated matters. (Dep. Salinas 128:25-129:14, attached as Exhibit P). Salinas
also testified that is a police officer now and that she does have a trust in law
enforcement officers being one. (Dep. Salinas 129:22-23, attached as Exhibit P).

78.    Valley County's Expert Witness Mark Muir is expected to testify that in his profession opinion and to a high degree of certainty, Valley County exercised reasonable care in supervising Deputy Strommen and satisfied the standard of care regularly expected of a rural-setting law enforcement agency in Montana. (Muir Expert Report, pp. 13-14, attached as Exhibit T).

DATED this 15th day of August, 2022.

CRIST, KROGH, ALKE & NORD, PLLC

By:   /s/ Harlan B. Krogh
      Harlan B. Krogh

*Attorneys for Defendant*
*Valley County*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of August, 2022, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| 1-3 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | Email |

1.    Clerk, U.S. District Court

2.    Adam Cook
Everett Law, PLLC
217 East Park Avenue
P. O. Box 969
Anaconda, MT 59711
adamcook@everettlawpllc.com
*Attorneys for Plaintiff*

3.    Jason T. Holden
Katie R. Ranta
Faure Holden
1314 Central Avenue
P. O. Box 2466
Great Falls, MT 59401
jholden@faureholden.com
kranta@faureholden.com
*Attorneys for Defendant Luke Strommen*

                        /s/ Harlan B. Krogh
                  Harlan B. Krogh
                  *Attorney for Defendant*
                  *Valley County*